Opinion
CECHINI, P. J.
I
Case Background
On February 7, 1975, defendant was arrested for drunk driving (Veh. Code, § 23102, subd. (a)). A complaint was filed in Stockton Municipal Court three days later, alleging a prior 23102, subdivision (a) conviction. Defendant entered a plea of not guilty.
On April 26, 1977, two years and two and one-half months later, after numerous legal maneuvers and continuances immaterial to this appeal, defendant, accompanied by his counsel, withdrew his not guilty plea at a pretrial conference, and entered a plea of guilty.
*Supp. 24 The change of plea was pursuant to an agreement by the prosecution to strike the prior conviction from the complaint for sentencing purposes. This, in effect, assured defendant no jail time. Judge Giffen thereupon continued the time for judgment and sentencing to allow defendant an opportunity to participate in an alcoholic treatment program as an alternative to a Department of Motor Vehicles revocation of his driver’s license, if and when such an alternative option became law statewide. The guilty plea waiver form signed by defendant and his counsel reflected this intention.
At the time of this plea bargain, Vehicle Code 13201.5 was in effect on a pilot basis, being limited to four counties for two years (from Jan. 1, 1976 to Jan. 1, 1978), as a trial experiment for determining whether such a rehabilitative program for problem drinkers, as an alternative to their losing their driver’s licenses, would prove effective sufficiently to warrant extending the program statewide. The section expressly stated that it would become applicable in all counties commencing January 1, 1978.
Section 13201.5 did become applicable in all counties commencing January 1, 1978. However, all but the first paragraph of the section was deleted, and the provisions for a rehabilitative program were placed in the Welfare and Institutions Code (div. 11, art. 5), instead, and were expressly made prospective only, so as to apply only to persons charged with drunk driving after January 1, 1978. (Welf. & Inst. Code, § 19975.13.) As a result, defendant never became eligible for such a rehabilitative program, and continued vulnerable to a driver’s license revocation by the Department of Motor Vehicles upon conviction in this action.
After numerous continuances, the matter came before Judge Giffen for judgment and sentencing on June 7, 1978, three and one-third years after the commission of the offense. At that time, defendant submitted a written motion to withdraw his guilty plea. The motion was supported by no declarations or affidavits, but the points and authorities attached thereto asserted the same ground for withdrawal of the guilty plea as is being asserted by defendant on this appeal, namely, that defendant was deprived of the principal part of his plea bargain by the change in the law which made the alternative to a Department of Motor Vehicles’ driver license suspension, of participation in a rehabilitative program, applicable only to persons charged with drunk driving after January 1, 1978, thereby rendering the plea bargain impossible to perform.
*Supp. 25 The matter was argued orally on June 7, 1978, and the motion was denied. A written order of denial was filed three weeks later. The minutes for the June 7 proceeding do not disclose whether oral testimony was offered by defendant in support of the motion.
Upon denial of the motion, Judge Giffen proceeded to pronounce judgment that defendant be fined $300 for violation of section 23102, subdivision (a), and that he receive a jail sentence of 180 days, to be suspended for 3 years upon certain conditions in regard to operating a motor vehicle. Defendant appeals from this judgment upon the sole ground that Judge Giffen abused his discretion in denying the motion to withdraw in view of the change in the law which denied defendant the benefit of his plea bargain. Execution of the sentence has been stayed pending this appeal.
II
Contentions of the Parties
(a) The defendant has cited numerous cases involving serious felony offenses where it was held that withdrawal of a guilty plea should be granted where the defendant does not get the benefit of his plea bargain. He argues that he has been deprived of the benefit of his plea bargain in this case because, when he entered into it, he reasonably expected, in the light of the current pilot program then codified in section 13201.5, and the language therein that the section would become effective statewide on January 1, 1978, that he would become eligible for participation in a rehabilitative program after Januaiy 1, 1978.
(b) The People argue that denial of a motion to withdraw a guilty plea should not be disturbed on appeal unless a clear abuse of discretion has been shown, and that there has been no such showing here since defendant substantially received the benefit of his plea bargain by reason of the striking of the prior for sentencing purposes and his receiving no jail time as a result. The prosecution points out that no promise was made to defendant that he would become eligible for a rehabilitative program, nor could such a promise have been made. The time for judgment and sentencing was expressly continued by the trial court in order to give defendant an opportunity to become eligible. The fact that he did not become eligible because of the prospective-only feature of the law which became effective January 1, 1978, was not the fault of either the prosecution or the trial court. A defendant should not be permitted to *Supp. 26 gamble on an anticipated result of his plea and demand a jury trial again when disappointed. The disappointment here arose from a collateral matter which was not the result of either mistake, ignorance or inadvertence.
Ill
Discussion of the Applicable Principles of Law
(1) Penal Code section 1018 reads, in part: “. . . On application of the defendant at any time before judgment the court may, and in case of a defendant who appeared without counsel must, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . .” (Italics added.)
This provision has been held applicable to misdemeanors. (People v. Superior Court (Giron), 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636]; People v. Cruz, 12 Cal.3d 562 [116 Cal.Rptr. 242, 526 P.2d 250].)
(2) The granting of an application to withdraw a guilty plea before judgment under section 1018 is within the sound discretion of the trial court and must be upheld unless an abuse of discretion is clearly demonstrated. (People v. Superior Court (Giron), supra; People v. Cruz, supra.)
(3) While mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea, good cause must be shown by clear and convincing evidence. (People v. Superior Court (Giron), supra, 11 Cal.3d at p. 797; People v. Cruz, supra, 12 Cal.3d at pp. 566-567.)
(4) At the time defendant entered his plea of guilty to violation of Vehicle Code, section 23102, subdivision (a), there was in effect Vehicle Code, section 13201.5, which read in pertinent part as follows:
“(a) A court may suspend the privilege of any person to operate a motor vehicle, for a period not exceeding six months, upon conviction of driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug.
“In the alternative, and in addition to the provisions of subdivision (c) of Section 23102 and the provisions of Section 23102.3, a court may *Supp. 27 refrain from suspending such privilege if the person convicted of such offense has consented to participate in, for at least one year and in a manner satisfactory to the court, a public or private program for the treatment of problem drinking or alcoholism ....
“(b) In order to determine which types of programs can most effectively provide for treatment of persons convicted of such offenses, this section shall be implemented during the period from January 1, 1976, through December 31, 1977, on a demonstration basis in four or fewer counties deemed most appropriate for that purpose by the office. The office shall approve several types of programs in such counties in order to prepare for effective implementation of this section statewide. This Section Shall Be Applicable In All Counties Commencing January 1, 1978.” (Emphasis added.)
As set forth in the court records, defendant entered his plea of guilty on the condition that the prior conviction would be stricken for plea purposes and to allow the defendant to participate in an alcoholic program in lieu of a driver’s license suspension by the Department of Motor Vehicles and that judgment and sentencing would be continued until Januaiy 1, 1978, wherein Vehicle Code, section 13201.5 was to take effect statewide.
(5) Between the time that defendant, Marvin Leroy Gallego, entered his conditional plea of guilty and the time for judgment and sentencing, there was a change in the law and specifically, with reference to 13201.5 of the Vehicle Code. The amended section and related Welfare and Institution Code sections read in pertinent part as follows:
Welfare and Institutions Code section 19975.01: “(a) As an alternative to the provisions of law relating to suspension of a person’s privilege to operate a motor vehicle upon conviction for driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug, as set forth in Section 13201.5 and subdivisions (a), (c), and (e) of section 13352 of the Vehicle Code, a court may refrain from suspending such privilege and the Department of Motor Vehicles may not suspend or revoke such privilege because of such a conviction if the person convicted of that offense has consented to participate, for at least one year and in a manner satisfactory to the court, in a program for the supervision of such persons and for treatment of their problem drinking or alcoholism that is approved pursuant to this article.”
*Supp. 28 Welfare and Institution Code, section 19975.13: “The Legislature finds and declares that, in order to provide for orderly and effective implementation of this article, to prevent the courts and programs in each county from being overburdened at the commencement of the implementation of this article, and to protect the public health and safety, this article shall apply only a prospective basis. Therefore, this article shall apply only to persons either (a) who are alleged to have committed the offense of driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug on or after January 1, 1978, and are subsequently convicted, for that offense or (b) who are alleged to have committed that offense on or after the date when a program, to which such a person may be referred by the court upon conviction for that offense, has been approved by the office, and are subsequently convicted for that offense, whichever date is later.”
The net effect of the change in the law as it pertains to appellant/defendant Gallego is that he apparently is not eligible for the participation in the alcoholic program in lieu of losing his driver’s license since he did not commit the offense on or after January 1, 1978, or in the alternative was not already enrolled in a program prior to the date that the new legislation became effective.
IV
Nature and Purpose of Plea Bargaining
(1) The theory behind plea bargaining is clearly set forth in the case of Blackledge v. Allison (1977) 431 U.S. 63, 71 [52 L.Ed.2d 136, 145, 97 S.Ct. 1621]: “Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country’s criminal justice system.” Their chief advantages are “. . . speed, economy and finality.”
In Santobello v. New York (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495], Chief Justice Berger made the following observations with respect to plea bargaining: “This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of *Supp. 29 the inducement or consideration, such promise must be fulfilled.” (See also, In re Troglin (1975) 51 Cal.App.3d 434, 438-439 [124 Cal.Rptr. 234].)
(3) As was held in the case of People v. Collins, 21 Cal.3d 208, at page 214 [145 Cal.Rptr. 686, 577 P.2d 1026], the court stated: “Critical to plea bargaining is the concept of reciprocal benefits. When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made. Thus, we held in People v. Delles (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629], that a judgment contrary to the terms of a plea bargain may not be imposed without affording the defendant an opportunity to withdraw his guilty plea. (See also Pen. Code, § 1192.5; People v. Johnson (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604].)”
Since the defendant/appellant could not receive the benefit of the plea bargain, reversal is mandatory. As was held in the case of People v. Wiles* (Cal.App.) the prosecutor initiated a proceeding to commit a person to the California Rehabilitation Center which was in violation of the plea bargain in that she would not receive more than 30 days probation. Since she did not receive the benefit of the plea bargain, reversal is mandatory. (See also People v. Coleman, 72 Cal.App.3d 287 [139 Cal.Rptr. 908], and In re Handsome, 72 Cal.App.3d 657 [138 Cal.Rptr. 400].)
V
Discussion
The court has thoroughly reviewed and analyzed cases cited by the respondent, the People of the State of California, and, unfortunately, they are not controlling.
The first case cited by respondent is the case of People v. Watts (1977) 67 Cal.App.3d 173 [136 Cal.Rptr. 496]. This case is cited for the proposition that the withdrawal of a guilty plea rests in the sound discretion of the court. While this court does not necessarily take issue with that concept of law, the case of People v. Watts, supra, is-certainly distinguishable from the case before it. The thrust of the appeal, or rather the issue on appeal in the case of People v. Watts is clearly set out on page 178, wherein the court states as follows:
*Supp. 30 “The principal thrust of this appeal concerns the nature and scope of the inquiry which must be made by the trial court as to the factual basis for a plea of guilty pursuant to Penal Code section 1192.5. Watts contends that the court did not adhere to the requirements of Penal Code section 1192.5 in the taking of his guilty plea. Section 1192.5 provides, in pertinent part, that upon a plea of guilty which is a part of a plea bargain, the ‘court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.’ (Italics added.) . . .
“Watts does not contend that there was no factual basis for his plea, but argues that because the trial court failed to make an on the record inquiry as to the factual basis, he should be permitted to withdraw his plea.”
The reading of the first two paragraphs of the case of People v. Watts clearly shows that it is completely distinguishable from this particular case. This is not a case where there was either a noncompliance of a plea bargain by the district attorney or an impossibility of compliance due to a change in the law. Watts was simply trying to get out of his plea of guilty on a flimsy technicality.
The second case relied on heavily by respondent is that of People v. Waters, 52 Cal.App.3d 323 [125 Cal.Rptr. 46], Again, we do not take issue with the fact that withdrawal of a guilty plea rests upon the sound discretion of the court. However, the case of People v. Waters is again distinguishable on its facts from the case at hand. In the Waters case, the defendant had entered a plea of not guilty and on the day set for trial, prior to the selection of a jury, defendant moved to withdraw his not guilty plea. Permission was granted and he entered pleas of guilty to both counts of the indictment. He specifically waived his rights in open court. The record does not reveal any reduction of either offense or other agreements made in consideration of his guilty plea. In response to a question asked by the judge, he stated that the only reason he was pleading guilty was because he was, in fact, guilty. Thereafter, he secured different counsel and prior to sentencing moved to withdraw his plea of guilty which was denied. The basis of his motion was that he did not understand the distinction between a general or an unrestricted right of appeal and the right which would be limited by a certificate of probable cause. The court found that there was undisputed evidence that there were no conditions which were made or attached to his guilty plea insofar as the trial court was informed and that no promises were made to him.
*Supp. 31 In other words, there was no bargain given to the defendant whatsoever; the defendant simply elected to enter his plea and pursue appellate remedies provided in Penal Code section 1538.5, subdivision (m).
Finally, respondent relies on the case of People v. Flores, 38 Cal.App.3d 484 [113 Cal.Rptr. 272], In the Flores case, there was a collateral consequence to the entiy of a plea of guilty and that was the fact that the defendant could be deported. Respondent tries to rationalize this case in support of their position on this appeal that participation in the program set forth in Vehicle Code section 13201.5 was regulated by the Department of Motor Vehicles. Again, there is a misstatement of a concept of a law by respondent. While it is true that the Department of Motor Vehicles was given the authority to choose three counties to initiate the program, the commitment of a defendant to a program is done by the court, not by the Department of Motor Vehicles. Moreover, in the Flores case, the defendant had been made aware that he could be deported but there was nothing in the plea bargain to the effect that he would not be deported nor were there any representations to the defendant one way or another about deportation. In this case, however, the appellant expressly entered a plea of guilty on the basis that he would be allowed to participate in an alcoholic rehabilitation program in lieu of losing his driver’s license. Therefore, this case is distinguishable from People v. Flores, supra, in that appellant Gallego expressly entered the plea to allow him to participate in an alcoholic program in lieu of losing his driver’s license.
In endeavoring to resolve the crucial issue in this matter, namely, did Judge Giffen abuse the discretion granted to him when he refused to permit the appellant to withdraw his plea of guilty, let us examine the statement in the record reflecting the defendant/appellant’s waiver when he entered his plea on April 26, 1977. It reads as follows: “Strike prior for plea purposes and to allow defendant to participate in an alcoholic program in lieu of a driving suspension by Department of Motor Vehicles 585—to be continued accordingly.”
This form, which is in clerk’s transcript, is signed by both appellant and his attorney, Larry L. Lawson.
There are no qualifications to said statement. It does not state that the appellant is to participate in an alcoholic rehabilitative program if eligible. It is apparent that were it not for the nonretroactive effect of the new amended statute, the appellant would have been eligible. He *Supp. 32 undoubtedly would have participated in the program and saved his license. It is also apparent to this court that one of the underlying purposes of the repeated continuances granted the appellant was to place him in a position to come within the scope of the legislation which would become applicable statewide January 1, 1978.
From the wording of the waiver, the court can infer that it was the intent of all parties—the appellant, the district attorney, and the court that the appellant reap the benefit of the expanded legislation. No one expected any modification of the existing legislation. If there had been any exception, the record would have so reflected.
One of the principal thrusts of respondent’s position relating to the legislation in question is the effect that the groundwork for said legislation was not finalized for all counties until January 1, 1978, and therefore, it could be reasonably implied that the appellant should have expected some type of changed legislation before the statewide implementation. However, the court finds no basis for any such contention. The language of the code section in force at the time of appellant Gallego’s plea was crystal clear (specifically set forth hereinabove). Not only was the language crystal clear but it was of the form of mandatory legislation. In other words, it stated “shall” not “may, ” Therefore, had the language of the legislation been to the effect that the program may take effect statewide on January 1, 1978, then the court would concur with respondent’s contention that appellant Gallego could have anticipated some kind of legislation or some kind of modification. However, when the language expressly states that it “shall” take effect statewide on January 1, 1978, the language is so explicit that it would be unreasonable to expect additional legislation or modification.
VI
Conclusion
The net effect of the change in the law as it pertains to the appellant/defendant Gallego is that he is not now eligible for the participation in the alcoholic program in lieu of losing his driver’s license since he did not commit the offense on or after January 1, 1978, or, in the alternative, was not already enrolled in a program prior to the date the new legislation became effective. Since San Joaquin County was not one of the selected counties providing such services prior to January 1, 1978, *Supp. 33 the appellant could not have been enrolled in one prior to January 1, 1978.
In this situation, the entiy of a guilty plea by the appellant Gallego was based on two considerations, namely:
No. 1—that the prior would be stricken for plea purposes and,
No. 2—that he would be allowed to attend an alcoholic rehabilitation program in lieu of having his driver’s license suspended.
Bcause of the change in the law, which none of the parties involved in the plea bargain either considered, discussed or anticipated, he cannot attend an alcoholic rehabilitation program and therefore runs the risk of losing his driver’s license. Therefore, it cannot be said in the case before it, that the appellant received the full benefits of the plea bargain. The language of the court in the case of People v. Collins, 21 Cal.3d 208, at page 214 [145 Cal.Rptr. 686, 577 P.2d 1026], is most apropos: “Critical to plea bargaining is the concept of reciprocal benefits. When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made. Thus, we held in People v. Delles (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629], that a judgment contrary to the terms of a plea bargain may not be imposed without affording the defendant an opportunity to withdraw his guilty plea. . . ”
While it is true that the courts have consistently held that a withdrawal of a guilty plea rests in the sound discretion of the trial court and a denial of a motion for withdrawal of a guilty plea may not be disturbed on appeal unless the trial court has clearly abused its discretion (People v. Watts, 67 Cal.App.3d 173 [136 Cal.Rptr. 496], after a review of the entire record in this action, the explicit written conditions accompanying the appellant’s waiver, coupled with the obvious intent of all the parties involved in the plea bargaining process (as evidenced by the prolonged continuances), it is apparent that:
(1) The appellant did not receive the full benefit of the plea bargain, and
(2) that Judge Giffen abused the discretion granted to him when he denied the appellant’s motion to withdraw his plea of guilty. The court’s ruling is in accord with the reasoning of our California Supreme Court in *Supp. 34 the case of People v. Superior Court (Giron), 11 Cal.3d 793, 798 [114 Cal.Rptr. 596, 523 P.2d 636], wherein it stated: “[T]he test of abuse [of discretion] in such circumstances is whether after consideration of all relevant factors there was good cause shown for granting the motion and whether justice would be promoted thereby.”
By reversing the lower court’s ruling in the case before it, this court believes justice will be promoted.
Wherefore, it is the decision of the court that the lower court’s order denying the appellant Marvin LeRoy Gallego’s motion to withdraw his plea of guilty to a violation of section 23102, subdivision (a) of the California Vehicle Code,
Be and is hereby reversed.
The matter is therefore remanded to the lower court for resumption of criminal proceedings.
Footnote-Forward :
The court wonders if, as a result of this court’s decision, the defendant and appellant will not be now facing a real dilemma in the lower court? If the District Attorney does not reduce the charges and the defendant is forced to go to trial on the original charge with a prior, and, in the event of a conviction, he then will be confronted not only with a license suspension, but jail time as well.
Dozier, J., and Sullivan, J., concurred.

 Reporter’s Note: Deleted on direction of Supreme Court by order dated March 9, 1978.